UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

    Plaintiff,

VS.

CASE NO. 02-10011-CR-KING

RODOBALDO AVILA SANCHEZ,

    Defendant.
_____/

## OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT

    COMES NOW, the Defendant, RODOBALDO AVILA SANCHEZ, by and through his undersigned counsel and files this, his Objections to the Presentence Investigation Report. In support, Mr. Avila Sanchez states as follows:

    1. Defendant objects to the arrest date of 2/24/02 at page 2 of the Presentence Investigation Report. The arrest date was 2/22/02.

    2. Defendant objects, to paragraph 6 at page 5 of the Presentence Investigation Report (PSI), as follows: (i) that the boat's navigational lights were not working; and (ii) the boat was "manifest unsafe" for their voyage. The navigational lights were working but were not turned on because it was daytime. Defendant objects to the conclusion that the boat was "manifestly unsafe" for their voyage.

    3. Defendant objects to the second sentence, at paragraph 7 at page 5 of the PSI, because it is incomplete. Defendant adds that he and his co-defendant went to Cuba only to pick up their families and the Soto family (i.e., no one else).

    4. Defendant objects to one point in paragraph 9 at page 5 of the PSI. That is, only one of the boat's engines stopped. They were navigating with both engines working

until one engine stopped. We turned off the second engine when approached by the Coast Guard cutter.

5. Defendant objects to the last sentence at paragraph 14 at page 7 of the PSI. There are no facts to support the conclusion that the boat was unsafe.

6. Defendant objects to paragraph 22 at page 9 of the PSI. There is no evidence that Defendant intentionally or recklessly created a substantial risk of death or serious bodily injury to another person. Defendant traveled to Cuba with the specific intent to pick up his mother, son, his ex-wife, his sister, the Soto family, and Louis Romero-Larreinaga's family. Thus, the trip was to pick a total of nine (9) people.

The vessel had fifteen (15) life preservers. There was food and bottle water on the vessel. There was sufficient gasoline for the trip. The trip is one of a short duration of time (i.e., approximately 4 to 6 hours to do the trip). See attached hereto, as Defendant's Exhibit No. 1, the inventory of the vessel prepared by Senior Border Patrol Agent Edwin I. Millan, which was provided by the Government in their Discovery Response at page numbered 0004.

There is no evidence that the vessel was unsafe for water travel. The vessel had no leaks. The vessel was never taking on water. The vessel had no damage and was in good condition. See attached hereto, as Defendant's Exhibits No. 2 and No. 3, which are report's prepared by the seizing agents and provided in Discovery at pages numbered 0002 and 0009. These two reports tell us that the vessel had no visible damage and that it was in good condition.

Defendant did not go to Cuba to pick up the other 21 people that forced their way on the boat. Defendant went to pick up nine (9) people which is a safe number of people to

have on the vessel. This is confirmed by the PSI, paragraph 5 at page 4, the last sentence where the government says that they received information that the defendants' tried to block some of the aliens from getting onboard and were overpowered.

Based on the above, this Court should sustain this objection because the Defendant did not intentionally or recklessly create a substantial risk of death or serious bodily injury to another person.

7. Defendant objects to paragraph 27 at page 10 of the PSI. The adjusted offense level should be 15.

8. Defendant objects to paragraph 30 at page 10 of the PSI. The total offense level should be 12.

9. Defendant objects to the first sentence in paragraph 44 at page 13 of the PSI. The Defendant cannot be considered an "aggravated felon" for the three (3) misdemeanor counts that he plead to in this case.

10. Defendant objects to paragraph 61 at page 18 of the PSI. Based on a total offense level of 12 and a criminal history category of I, the guideline imprisonment range is 10 to 16 months. This is ZONE C and the Court can enter a split sentence of 5 months imprisonment and 5 months of home detention. Defendant asks this Court to sentence him as just described.

11. Defendant requests that the Court recommend to the Bureau of Prisons a prison facility as close to South Florida as possible.

WHEREFORE, Defendant, RODOBALDO AVILA SANCHEZ, respectfully requests that his objections to the P.S.I. be sustained by the Court.

Respectfully submitted,

MANUEL GONZALEZ, JR., ESQ.
782 N.W. LE JEUNE ROAD
SUITE 440
Miami, Florida 33126
(305) 567-0100
(305) 445-0543 (fax)

BY: _____
MANUEL GONZALEZ, JR., ESQ.
FLORIDA BAR NO. 397997

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent to: Nancy Langston, A.U.S.A., 99 N.E. 4th Street, Suite 600, Miami, Florida 33132, and Cora Bencomo, U.S. Probation Officer, 300 N.E. 1st Avenue, Room 315, Miami, Florida 33132, by U.S. mail on this 23rd day of July, 2002.

BY: _____
MANUEL GONZALEZ, JR., ESQ.

-4-

*Defendant's Exhibit No. 1*

# Inventory of vehicle, vessel, or aircraft seized under 8 USC 1324(b)

Seizure, (CATS), number _____
Other case number _____

Type of conveyance:
    Aircraft ☐, Car ☐, Trailer ☐, Truck ☐, Vessel ☑

Make Gold Craft, 26'
Model Pleasurecraft
Year 1990       VIN _____

List all items of property found within conveyance that are not supplied by the Original equipment manufacturer, including personal property left in conveyance.

2 225 HP Mercury engines
1 15 Gallon Barrel and transfer hose
1 - 1 gallon Fuel Can, Plastic, Full
2 knives, Rusty
2 Fishing Rods Unassembled (no tackle)
Diapers, Various medicines (unidentified types)
Several Cuban "Bainoa" bottled water
1 Bottle of Gatorade
At least 4 bags of Snacks
(crackers) Various canned food
At least 15 adult Floatation Devices
2 Electrical Adapters
2 gallons of Outboard Oil
Black Bag (waist) with Syringes and medicine
1 hand held spotlight

Inventoried by: E. Millon       Date 02/23/2002
Witness  C. Grace

Are additional sheets attached?  Yes ☐,  How many? _____
    No ☑

0004

Defendant's Exhibit No. 2

The Narrative for I-44# 02-MAF- 02-03

On Friday, February 22, 2002 at about 2:10pm United States Coast Guard Station in Marathon, Fl. advised the Marathon Border Patrol they had information on a Go-Fast Vessel described as having a white hull and two black outboard engines that had left Cuba and was on it's way to the United States with over 25 occupants. Border Patrol advised United States Customs Marine Units and Monroe County Sheriff's Office air assets.

At about 3:00pm we were advised by USCG Group Key West that an air asset had spotted a vessel with a large amount of people headed to the United States. Based on the current track it was expected the vessel would arrive into the United States somewhere between Marathon, Florida and Bahia Honda State Park near Big Pine Key, Florida. Several Law Enforcement Officers assisted in covering potential landing areas and USCS launched a vessel to assist the USCG if needed.

At about 3:30pm USCS Marine Officer Bill Leonard whom was underway to assist the USCG advised Border Patrol that Coast Guard assets were able to intercept vessel. Vessel was identified as a white hull 26' Gold Craft with two black 225hp black Mercury outboard engines bearing FL8323GJ and it was carrying 34 people whom appear to be Cuban Nationals. Occupants of vessel were transferred to a Coast Guard Cutter for interview by an Asylum Officer and vessel was taken to the Marathon, Fl. Coast Guard station and turned over to Marathon Station Border Patrol for investigation. Smuggling vessel arrived to the Marathon USCG station at about 8:00pm. Vessel was secured with crime scene tape and a warning sticker by Senior Patrol Agent Marcial. The vessel was then inspected and inventoried the next morning at about 7:30am with daylight by Senior Patrol Agent Grace and I; Agent Millan.

Vessel has no visible damage. It is registered to a Manuel Jose Baquero (DOB: 3/29/28) from Miami, Fl. A Colombian National who entered the United States on or about 8/31/65 and has A# 14 452 434.

Items onboard vessel were:

1) A full 1 gallon fuel container in a bow compartment
2) An empty 15-gallon container with fuel residue and a hose in a front deck compartment
3) 2 rustic rusty knives
4) 2 fishing rods "one without tackle and one with a deteriorated hook" no other fishing gear found.
5) Diapers
6) A waist fanny pack with syringes and medicine
7) Bottled water from Cuba "Bainoa" brand
8) At least 4 bags of snacks, canned meat products.
9) 15 adult flotation devices
10) 1 hand held spotlight
11) 1machete (under drivers helm seat) easily accessible to helmsman
12) A black watch cap

0002

Items onboard vessel that were removed from vessel for turn over to ASU are a Motorola GMPCS Personal Communications Digital Cell Phone in its case bearing numbers 99357-85562 on the antenna and a Garmin GPS 12 Channel bearing serial number SSN 36986390.

Defendant's Exhibit No. 3

# UNITED STATES DEPARTMENT OF JUSTICE
## Immigration and Naturalization Service

### RECORD OF SEIZED VEHICLE, VESSEL OR AIRCRAFT (Under 8 USC 1324 (b))
(See Instructions on Reverse Before Completing)

| # | Field | Value |
|---|---|---|
| 1. | Type of conveyance | ☒ Vessel |
| 2. | Year | 1990 |
| 3. | Make | GOLD CRAFT |
| 4. | Model | PLEASURE CRAFT |
| 5. | Style | |
| 6. | Color | WHITE |
| 7. | License (State/County/Yr/No) | FL 8323 GJ |
| 8. | Vehicle Identification Number | |
| 9. | Engine (Cubic In) | |
| 10. | No. of Cylinders | |
| 15. | Condition | GOOD |

**EQUIPMENT AND ACCESSORIES:**
- VHF RADIO
- COMPASS (MOUNTED)
- 2 OUT BOARD ENGINES 225 MERC

**FACTS TO ESTABLISH PROBABLE CAUSE:**
SEE I-44 # 02-MAF-02-03 DATED 2/23/02.

0009

| # | Field | Value |
|---|---|---|
| 18. | Place Seized | MARATHON, FL. |
| 19. | Date Seized | 2/23/02 |
| 20. | Conveyance is Registered in the Name of | MANUEL JOSE BAQUERO |
| 21. | Address | 14611 SW 88 ST. MIAMI, FL. |
| 26. | Is the Conveyance Suitable for Official Use | ☒ Yes  ☐ No |